*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BELL, Minors.

UNPUBLISHED
July 10, 2026
12:57 PM

No.   377798; 378707
Kalamazoo Circuit Court
Family Division
LC No.   2025-000123-NA

Before:  ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

In this consolidated appeal[1] arising from a child protective proceeding, respondent-father appeals two orders of the trial court.  In Docket No. 377798, he challenges the trial court's decision to remove the minor children, DB and AB, and place them in the Department of Health and Human Services' care and custody.  In Docket No. 378707, he challenges the trial court's exercise of jurisdiction under MCL 712A.2(b)(2).  We affirm.

## I.  BACKGROUND

Respondent-father has two minor children, DB and AB, who were born of his marriage to respondent-mother.  Respondent-father is also the biological father of DD.[2]

In 1997, respondent-father pleaded no contest to two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d, after he sexually abused DD while she was a minor, resulting in one pregnancy ending in miscarriage and two pregnancies carried to term.  He was imprisoned for 12 years and was required to register as a sex offender.  The respondents met after respondent-

---

[1] *In re Bell, Minors*, unpublished order of the Court of Appeals, entered April 14, 2026 (Docket Nos. 377798 and 378707).

[2] Respondent-mother, who is not a party to this appeal, is not DD's mother.  Because DB and AB are the only children subject to the instant petition, references to "the children" in this opinion refer only to them.

-1-

father's release from prison and subsequently married, but they divorced in 2016 after respondent-mother learned about the sexual abuse and resulting convictions. The respondents' judgment of divorce awarded respondent-mother sole legal and physical custody of DB and AB, and respondent-father was awarded parenting time.

The instant proceedings began in May 2025 when the DHHS filed a petition for child protective proceedings alleging that both parents were unable to provide proper care and custody and requesting that the trial court take jurisdiction over the children under MCL 712A.2(b)(1) and (2) and remove the children from respondents' care. As to respondent-mother, the petition alleged that her home was unsafe and unsanitary, she was unable to consistently meet the children's basic needs despite extensive services, and Adult Protective Services was evaluating whether a guardianship was necessary. As to respondent-father, the petition alleged that he posed a risk to the children because of his previous sexual abuse of DD.

At the preliminary hearing, respondents stipulated to probable cause, and the court authorized the petition. The court allowed the children to remain in respondent-mother's custody but ordered that respondent-father's parenting time occur at the DHHS's discretion, concluding that his sexual abuse of DD demonstrated a direct risk of harm to the children's well-being.

One month later, following additional concerns that respondent-mother was not meeting the children's needs, the DHHS moved to remove the children from her care. The court granted the motion, placing the children in the DHHS's care and custody, and ordered supervised parenting time for both respondents.

At the subsequent adjudication trial, the referee admitted without objection a certified record of respondent-father's 1997 convictions and a 1996 competency evaluation prepared in connection with the criminal proceeding. The ongoing caseworker testified to the circumstances surrounding those convictions, including that DD was only 11 years old when respondent-father began sexually abusing her. Additionally, DB's foster care placement, who lived next door to respondent-father for several years before the petition was filed, testified that respondent-father beat DB and AB with a belt. In his own testimony, respondent-father acknowledged his CSC-III convictions but asserted that he was a "born again Christian." Applying the doctrine of anticipatory neglect, the referee found statutory bases to exercise jurisdiction over the children under MCL 712A.2(b)(1) and (2). The court adopted that finding in a written order that also required both respondents to undergo psychological evaluations and respondent-father to participate in a sex-offender assessment. It is from that order that respondent-father appeals as of right in Docket No. 377798.

Between the adjudication trial and dispositional hearing, the lawyer-guardian ad litem (LGAL) for the children moved to suspend respondent-father's parenting time with DB, alleging that the child had been having nightmares about past sexual and physical abuse he attributed to respondent-father and that the child disclosed being forced to shower with respondent-father and being beaten with belts and electrical cords. The LGAL further alleged that respondent-father hit DB in the back during supervised visitation, causing the child to be thrown to the pavement. After hearing testimony from DB's placement and the children's foster care caseworker, the court found that visitation with respondent-father was causing DB mental harm and therefore suspended respondent-father's parenting time with the child.

A dispositional hearing was thereafter held. The foster care caseworker testified that respondent-father refused to cooperate with the psychological evaluation and sex-offender assessment, so neither had been completed. At the hearing's conclusion, the referee found that returning the children to either parent would present a substantial risk of harm to their lives, physical health, and mental well-being. The court adopted the referee's findings and continued the children's placement in foster care, and it ordered that the DHHS continue to make reasonable efforts at reunification. In Docket No. 378707, respondent-father appeals that order as of right.

## II. DISCUSSION

## A. REMOVAL AND PLACEMENT

In Docket No. 377798, respondent-father challenges the trial court's decision to remove the children and place them in the DHHS's care.

When a trial court orders the removal of a child from a parent's care and places the child into foster care, the trial court "must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *In re Benavides*, 334 Mich App 162, 168; 964 NW2d 108 (2020). This Court reviews a trial court's factual findings for clear error. *Id*. at 167. A trial court's finding "is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Even if the trial court clearly erred, however, "this Court will not disturb the trial court's order unless it would be inconsistent with substantial justice to permit the order to stand." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020) (quotation marks and citation omitted). "This Court reviews de novo questions of law, including the interpretation and application of our court rules." *In re McCarrick/Lamoreaux*, 307 Mich App 436, 445; 861 NW2d 303 (2014).

"At the preliminary hearing, the court must decide whether to authorize the filing of the petition and, if authorized, whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *Benavides*, 334 Mich App at 167 (citation omitted). A trial court may order that a child be placed into foster care if it finds all of the following:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).

> (c) Continuing the child's residence in the home is contrary to the child's welfare.

> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCR 3.965(C)(2)(a)-(e); see also MCL 712A.13a(9).]

If the court orders placement, it must make explicit contrary-to-the-welfare findings. MCR 3.965(C)(3). When the court places a child with someone other than a custodial parent, guardian, or legal custodian, the court must make explicit reasonable-efforts findings. MCR 3.965(C)(4); see also MCL 712A.13a(9)(d). The "preponderance of the evidence" standard applies to a trial court's findings regarding removal and placement. *Williams*, 333 Mich App at 183.

A trial court must review a placement order upon a party's motion, "and may modify the order . . . if it is in the best interest of the child." MCR 3.966(A)(1). If the motion seeks to remove the child from a parent, the court must follow the placement procedures in MCR 3.965(B) and (C). MCR 3.966(A)(1).

In this case, the trial court declined to remove the children at the preliminary hearing, instead allowing the children to remain in respondent-mother's care and custody, though the court required respondent-mother and the children to reside in a safer and more suitable home. The court ordered that respondent-father's visitation occur at the discretion of the DHHS, citing his sexual abuse of DD when she was around the same age as DB and AB were at the time the petition was filed. The LGAL subsequently moved to remove the children and place them in foster care, alleging respondent-mother physically abused the children, was not meeting their needs, and allowed respondent-father unsupervised access to the children contrary to the safety plan's condition that respondent-father's parenting time occur only under its supervision.

At the hearing on the motion, the case investigator testified that extensive services were offered to respondent-mother, including the Family Skills and Next Step programs, but she had not fully engaged in any of those services. She was struggling with budgeting and meeting the children's basic needs, such as food, clothing, shelter, and medical care. Additionally, she allowed respondent-father to have unsupervised contact with the children on numerous occasions despite the investigator repeatedly reminding her that such contact violates the court's order. To accommodate respondents' cognitive limitations, they were provided with a verbal safety plan, which the investigator confirmed that they understood, but neither parent was complying with that plan.

The referee indicated that it was deeply concerned about the children's safety and lacked confidence in respondents' ability to meet the children's basic needs, pointing to testimony about DB missing medical appointments, respondent-mother facing eviction for the second time in these proceedings, and respondent-father's unsupervised contact with the children. The referee found that there was a substantial risk of harm if the children remained at home and it was contrary to their welfare to remain there, reasonable efforts were made to prevent or eliminate the need for removal, no other services or alternative arrangement could alleviate the conditions necessitating removal, and conditions of custody away from respondents were adequate to safeguard the children. The referee therefore granted the motion, ordered that the children be placed with the DHHS, and mandated supervised parenting time for both respondents. The trial court thereafter adopted the referee's findings in a written order.

On appeal, respondent-father asserts that the trial court failed to make the findings required by MCL 712A.13a(9) and MCR 3.965(C), though he does not identify any specific factor the trial court failed to consider. Instead, the thrust of his argument appears to be a challenge to the evidentiary support for the trial court's findings.

As a preliminary matter, the trial court made explicit findings as to each factor set forth in MCL 712A.13a(9) and MCR 3.965(C)(2), and it made explicit contrary-to-the-welfare and reasonable-efforts findings as required by MCR 3.965(C)(3) and (4), respectively. The trial court is "not obligated to articulate extensive findings regarding every conceivable detail." *Williams*, 333 Mich App at 183. Instead, "when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*. The trial court's findings here satisfy that obligation.

Moreover, a preponderance of the evidence supported the trial court's findings. The trial court found after the preliminary hearing that custody with respondent-father posed a substantial risk of harm to the children's well-being and that it was contrary to their welfare to be placed in his care, citing his sexual abuse of DD when she was a similar age to the children. In so finding, the trial court appropriately invoked the doctrine of anticipatory neglect, which "recognizes that how a parent treats one child is certainly probative of how that parent may treat other children." *In re KV*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 374236); slip op at 7 (cleaned up). Thus, respondent-father's treatment of DD is probative of how he might treat DB and AB. The probative value of that inference is amplified because respondent-father's abuse of DD began when she was the same age as DB and AB were at the time the petition was filed.

The court's finding that no provision of service or other arrangement except removal was reasonably available was also supported by a preponderance of the evidence. The case investigator testified that, despite being offered extensive services to assist her in meeting the children's basic needs, respondent-mother was unable to provide food, clothing, or appropriate medical care, and she was facing eviction. And though she was repeatedly counseled against doing so, she continued to allow respondent-father unsupervised contact with the children. Because of the risk of harm respondent-father posed if the children were placed in his care, the trial court did not find placement with respondent-father to be a suitable alternative. Additionally, though respondent-father contends that reasonable efforts were not made to prevent removal, the case investigator's testimony supported the court's finding to the contrary and, in any event, because respondent-father is a registered sex offender, reasonable efforts were not required, see MCR 3.965(C)(4)(d).

The trial court made the requisite findings under MCR 3.965(C) and MCL 712A.13a(9) to support its removal and placement decisions, and those findings were supported by a preponderance of the evidence. Accordingly, respondent-father has not established error relative to those decisions.

## B. ADJUDICATION

In Docket No. 378707, respondent-father raises two claims of adjudicative error. First, he asserts that the trial court abused its discretion by admitting the judgment of sentence from his CSC-III convictions, the 1996 competency evaluation prepared in connection with the criminal

proceeding, and testimony from the caseworkers regarding those convictions. Second, he submits that the properly admitted evidence was insufficient to support the trial court's exercise of jurisdiction under MCL 712A.2(b)(2).[3] We address each argument in turn.

### 1. EVIDENTIARY CHALLENGES

To preserve an evidentiary issue for appellate review, a respondent must object to the admission of that evidence in the trial court. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). Respondent-father did not object to the caseworkers' testimony regarding his convictions, so we review that issue for plain error affecting substantial rights. See *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). To obtain relief under that standard, a respondent must show (1) an error occurred, (2) the error was plain, and (3) the plain error affected the outcome of the proceedings. *Id*. Reversal is warranted only "when the plain, forfeited error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (cleaned up).

Concerning the judgment of sentence and the competency evaluation, however, respondent-father did not merely fail to object to the admission of those exhibits: he expressly acquiesced to, and thereby waived review of, their admission. Waiver is "the intentional relinquishment or abandonment of a known right." *In re MJC*, 349 Mich App 42, 49; 27 NW3d 122 (2023) (citation omitted). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Id*. (citation omitted). When the DHHS moved to admit both the judgment of sentence and the competency evaluation, respondent-father's counsel stated that he had no objection to either. The affirmative acceptance of the evidence constitutes waiver, extinguishing any claim of error. See *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011) (defense counsel's statement that he had "no objections" to proposed jury instructions was an "express and unequivocal" indication of approval sufficient to constitute waiver of an instructional challenge on appeal). Because respondent-father waived his challenges to the admission of the judgment of sentence and the competency evaluation, no error remains to review relative to those exhibits. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

Regarding the caseworkers' testimony, one caseworker testified that she had concerns about placing the children with respondent-father because of his convictions for sexually abusing DD. Another caseworker testified that, as a condition of respondents' safety plan, the children

---

[3] On appeal, respondent-father erroneously characterizes this as a challenge to the trial court's finding of "subject-matter jurisdiction," but the substance of his argument challenges the trial court's exercise of jurisdiction under MCL 712A.2(b)(2). His argument thus conflates the existence of subject-matter jurisdiction and a trial court's exercise of jurisdiction under MCL 712A.2(b). Subject-matter jurisdiction is "the right of the court to exercise judicial power over a class of cases, not the particular case before it." *Grebner v Oakland Co Clerk*, 220 Mich App 513, 516; 560 NW2d 351 (1996). The trial court's subject-matter jurisdiction is established pursuant to MCL 600.1021 and MCL 600.601(4), which provide that the family division of the circuit court "has sole and exclusive jurisdiction over . . . [c]ases involving juveniles as provided [in the juvenile code, MCL 712A.1 *et seq*.]."

could not be with respondent-father unsupervised. When asked why that condition was put in place, the caseworker explained that respondent-father had previous convictions for sexually abusing DD, resulting in three pregnancies.

Respondent-father asserts that the caseworkers lacked personal knowledge of the circumstances surrounding his convictions, so their testimony concerning the convictions constituted inadmissible hearsay.[4] That argument is unpersuasive. Even assuming for the sake of argument that the caseworkers' testimony regarding the basic facts surrounding the convictions constituted hearsay and was therefore inadmissible under MRE 802, any error in the admission of that testimony was harmless. The erroneous admission of hearsay evidence is harmless when it is cumulative of properly admitted evidence establishing the same facts. *People v Smith*, 336 Mich App 79, 116; 969 NW2d 548 (2021). In his own trial testimony, respondent-father acknowledged his CSC-III convictions and that DD was the victim. The caseworkers' testimony regarding the circumstances surrounding his convictions was therefore cumulative of his own testimony, and any error in its admission was harmless.[5]

### 2. MCL 712A.2(b)(2)

To properly exercise jurisdiction over a child in a child protective proceeding, the trial court must find by a preponderance of the evidence the existence of a statutory basis for jurisdiction under MCL 712A.2(b). *In re Long*, 326 Mich App 455, 460; 927 NW2d 724 (2018). We review a trial court's jurisdictional determination for clear error in light of the trial court's findings of fact. *Id*. We defer to the trial court's "special opportunity . . . to judge the credibility of the witnesses who appeared before it." *MJC*, 349 Mich App at 61 (citation omitted).

Under MCL 712A.2(b), a trial court may exercise jurisdiction over a child:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being . . . , [or]

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1)-(2).]

---

[4] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. MRE 801(c).

[5] In his discussion of the purported evidentiary errors, respondent-father also asserts that trial counsel's failure to object to the challenged evidence constitutes ineffective assistance of counsel. But respondent-father did not properly present this argument in his statement of questions presented and he has therefore waived appellate review of that claim. See *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011).

"To properly find jurisdiction over a child, at least one statutory ground must be proven." *In re Miller*, 347 Mich App 420, 430; 15 NW3d 287 (2023). A trial court making a jurisdictional determination "must examine the child's situation at the time the petition was filed because MCL 712A.2(b) speaks in the present tense." *In re Leach*, 347 Mich App 26, 32; 14 NW3d 178 (2023) (cleaned up).

In this case, the trial court found by a preponderance of the evidence that statutory grounds to exercise jurisdiction existed under MCL 712A.2(b)(1) and (2). But respondent-father only challenges the trial court's findings under subsection (2) and does not address the findings under subsection (1). Even assuming the trial court erroneously exercised jurisdiction under MCL 712A.2(b)(2), any error would not entitle respondent-father to relief because the trial court need only find one statutory ground has been proven by a preponderance of the evidence to exercise jurisdiction, *Miller*, 347 Mich App at 430, and respondent-father does not challenge the court's exercise of jurisdiction under MCL 712A.2(b)(1). Stated differently, because respondent-father does not challenge the independent jurisdictional basis under MCL 712A.2(b)(1), affirmance is required irrespective of any purported errors in the court's findings concerning subsection (2). Accordingly, we decline to address the merits of respondent-father's arguments concerning subsection (2).

Affirmed.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney